**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**THE SIKH COALITION**
165 Broadway, 23rd Floor
New York, NY 10006,

       *Plaintiff,*

    v.

**FEDERAL MOTOR CARRIER
SAFETY ADMINISTRATION,
UNITED STATES DEPARTMENT OF
TRANSPORTATION**
1200 New Jersey Avenue, SE,
Washington, DC 20590,

       *Defendant.*

Case No. 1:26-cv-02099

**COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF UNDER THE
FREEDOM OF INFORMATION ACT**

**COMPLAINT UNDER THE FREEDOM OF INFORMATION ACT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

1.     Plaintiff, The Sikh Coalition, brings this action against Defendant, Federal Motor Carrier Safety Administration ("FMCSA"), to compel compliance with the Freedom of Information Act ("FOIA"), codified under 5 U.S.C. § 552 et seq. Plaintiff respectfully requests that this Court order Defendant to make a determination regarding its records request and to disclose all non-exempt responsive records.

**JURISDICTION AND VENUE**

2.     This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and as a federal question under 28 U.S.C. § 1331.

3.     This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act pursuant to 28 U.S.C. § 2201 et seq.

4.     This Court has the authority to grant injunctive relief pursuant to 5 U.S.C. § 552(a)(4)(B).

5.      Venue is proper under 5 U.S.C. § 552(a)(4)(B), which provides that the venue for FOIA lawsuits is the District of Columbia.

**PARTIES**

6.      Plaintiff is a national, non-profit, nonpartisan 26 U.S.C. § 501(c)(3) civil rights organization dedicated to ensuring that members of the Sikh community in the United States are able to practice their faith without fear of discrimination or backlash.

7.      The Sikh Coalition defends the civil rights and civil liberties of Sikhs by providing direct legal services, advocating for legislative change, educating the public about Sikhs and Sikhi, promoting local community empowerment, and fostering civic engagement amongst Sikhs. The organization also educates community members about their legally recognized free exercise rights and works with public agencies and officials to implement policies that accommodate their sincerely held beliefs.

8.      The Sikh Coalition was originally founded as an effort to combat uninformed hate violence and discrimination against Sikh Americans after September 11, 2001.

9.      The Sikh Coalition has long stood for the legal rights of Sikh truck drivers, including by representing plaintiffs in landmark hiring discrimination litigation, fighting for truck drivers' rights to maintain their articles of faith while working in the trucking industry, seeking justice for drivers who experience bias-motivated assault, producing accessible "Know Your Rights" resources in Punjabi, and more. Most recently, in *Doe v. Cal. Dep't of Motor Vehicles*, No. 25CV161994 (2025), slip op. (Cal. Super. Ct. Alameda Cnty. Mar. 2, 2026), The Sikh Coalition obtained a class action writ of mandate on behalf of 20,000 commercial driver's license ("CDL") holders, including Sikh CDL holders.

10.     Defendant is a sub-agency of the United States Department of Transportation ("DOT") within the meaning of 5 U.S.C. § 552(f). FMCSA was established within DOT pursuant to the Motor Carrier Safety Improvement Act of 1999, codified under 49 U.S.C. § 113 et seq.

11.     Among other duties, FMCSA is responsible for developing standards to test and license commercial motor vehicle drivers and for administering programs that improve safety performance and remove high-risk carriers from the nations' highways. FMCSA is also responsible for promulgating regulations and issuing guidance and policy memoranda on the application, enforcement, compliance with, and interpretation of those regulations.

12.     Based on these responsibilities, FMCSA has possession, custody, and control of the records that The Sikh Coalition seeks.

## STATEMENT OF FACTS

13.     Federal regulations require CDL holders possess the ability to read and speak English sufficiently to converse with the general public, understand highway traffic signs and signals, respond to official inquires, and make entries on reports and records. These requirements are codified under 49 C.F.R. §391.11(b)(2) and are generally referred to as the "English language proficiency" or "ELP" requirements.

**Background on the Enforcement of the ELP Requirement**

14.     In 2007, FMCSA issued guidance that instructed FMCSA inspectors to cite drivers and motor carriers for violations of 49 C.F.R. § 391.11(b)(2) when a driver failed to communicate in English sufficiently to understand and respond to official inquiries and directions, and to place the driver out-of-service ("OOS").

15.     On June 15, 2016, FMCSA changed course and issued a policy memorandum titled "English Language Proficiency Testing and Enforcement Policy MC-ECE-2016-006" ("2016 Guidance") to all FMCSA personnel conducting safety investigations, audits, and inspections of

commercial motor vehicles ("CMV"). (**Exhibit 1**). This guidance prohibited the practice of conducting formal interviews to test a driver's English proficiency and no longer required FMCSA inspectors to place drivers OOS for violations of the ELP requirements.

**Executive Order 14286**

16.    On April 28, 2025, President Donald Trump signed Executive Order 142861,[1] directing the Secretary of Transportation ("Secretary") to rescind the 2016 Guidance and to issue new guidance to FMCSA and enforcement personnel outlining revised inspection procedures necessary to ensure compliance with the requirements of 49 C.F.R. § 391.11(b)(2).

17.    The Commercial Motor Vehicle Safety Alliance ("CMVSA") voted to remove ELP violations from their OOS criteria "because they could not substantiate the safety impacts." (**Exhibit 1 at 2**).

18.    Executive Order 14286 also directed the Secretary to ensure that FMCSA's OOS criteria be revised such that an ELP violation results in a driver being placed OOS.

19.    On May 20, 2025, The Sikh Coalition sent a letter to DOT ("May 20th Letter") expressing support for common sense safety measures like the existing ELP requirement for commercial drivers, and conveying the importance of ensuring the Department's forthcoming guidance contained provisions that mitigated the risk of drivers being subjected to heightened levels of scrutiny or otherwise subject to wrongful discrimination during the course of ELP enforcement because of their race, ethnicity, or national origin. (**Exhibit 2**).

20.    Two DOT employees confirmed receipt of the May 20th Letter. (**Exhibit 3**).

---

[1] Exec. Order No. 14286, *Enforcing Commonsense Rules of the Road for America's Truck Drivers* (April 28, 2025), *available at* https://www.govinfo.gov/content/pkg/DCPD-202500532/pdf/DCPD-202500532.pdf.

**DOT's May 20, 2025 Guidance regarding Enforcement of ELP Requirement**

21.     On the same day that The Sikh Coalition sent its letter, DOT issued a policy memorandum, "English Language Proficiency Under 49 CFR § 391.11(b)(2) (MC-SEE-2025-0001)," ("2025 Guidance") rescinding and superseding the 2016 Guidance and setting forth new requirements. (**Exhibit 4**).

22.     The 2025 Guidance provides guidance to FMCSA inspectors on the steps to take when conducting driver interviews and highway traffic sign recognition assessments as part of the ELP assessment. In addition to requiring roadside inspectors to place any driver cited for violating the ELP requirement OOS, the 2025 Guidance also directs inspectors to conduct an ELP assessment any time their initial contact with a driver indicates that the driver may not understand the inspectors' initial instructions.

23.     However, the public version the 2025 Guidance is heavily redacted with significant portions of the procedures for conducting ELP assessments blacked out.

24.     Two documents attached to the 2025 Guidance entitled "Strategies for Communication with Non-Native Speakers of English and Examples of Driver Interview Questions," and "Highway Traffic Signs Examples," are also significantly or entirely redacted as of May 6, 2026.

25.     The 2025 Guidance redacts the procedures FMCSA inspectors use to conduct driver interviews during roadside inspections.

26.     The 2025 Guidance also redacts the procedures FMCSA inspectors use to administer the Highway Traffic Sign Recognition Assessment.

27.     The public has a strong interest in understanding the criteria and methods the government uses to make these determinations, particularly for truck drivers, where those determinations directly affect an individual's ability to earn a living.

- 5 -

28.     Drivers, in turn, need access to these procedures to understand what is expected of them during roadside inspections and to ensure they can prepare for and comply with those procedures.

29.     The Sikh Coalition regularly develops and disseminates "Know Your Rights" materials and other educational resources to inform truck drivers about their legal and constitutional rights.

30.     The requested records are necessary for The Sikh Coalition to accurately educate drivers about the procedures and standards currently used by FMCSA during roadside inspections.

**The Sikh Coalition's Attempts to Obtain an Unredacted Copy**

31.     On May 29, 2025, The Sikh Coalition sent a second letter to DOT ("May 29th Letter") requesting unredacted versions of the 2025 Guidance and its attachments.

32.     The request explained the significant public interest in understanding FMCSA's new procedures for assessing drivers' ELP during roadside inspections and expressed concern that the 2025 Guidance provides insufficient instruction to roadside inspectors, increasing the risk of unlawful discrimination against drivers during the course of, or under the guise of, ELP enforcement. (**Exhibit 5**).

33.     On May 30, 2025, Bill Mahorney, Chief of FMCSA's enforcement division, informed The Sikh Coalition via email that "a response to [The Sikh Coalition's] initial communication has been prepared and [was] in departmental review at this time." (**Exhibit 6**).

34.     The Sikh Coalition responded to Mr. Mahorney on the same day, stating that it "will be sure to keep an eye out for the response," to which Mr. Mahorney replied "[t]hank you Sir!" (**Exhibit 7**).

35.    On June 23, The Sikh Coalition emailed Mr. Mahorney requesting an update regarding the response he had represented on May 20 was under departmental review, or an estimate of when that response could be expected. (**Exhibit 8**).

36.    Mr. Mahorney did not respond.

**The Sikh Coalition Submits a FOIA to FMCSA**

37.    On July 8, 2025, The Sikh Coalition sent a FOIA request ("July 8th Request") via electronic mail to FMCSA.

38.    The July 8th Request sought (i) an unredacted copy of the 2025 Guidance, referred to in the July 8th Request as "Internal Agency Enforcement Policy, 'English Language Proficiency Under 49 CFR § 391.11(b)(2) (MC-SEE-2025-0001),'" and; (ii) unredacted versions of the two documents attached to the 2025 Guidance, referred to in the July 8th Request as "(a) attachment 1, 'Strategies for Communication with Non-Native Speakers of English and Examples of Driver Interview Questions,' and (b) attachment 2, 'Highway Traffic Sign Examples.'" (**Exhibit 9**).

39.    The Sikh Coalition's FOIA Control Number is FMCS-2025-07153.

40.    The statutory deadline for FMCSA to make a determination as to whether it would comply with the July 8th Request and inform The Sikh Coalition of its determination was August 5, 2025.

41.    On July 9, 2025, FMCSA acknowledged receipt of the July 8th Request via email and advised The Sikh Coalition that its FOIA Office was experiencing exceptional circumstances because it was working to reduce a nine- to eleven-month backlog of requests while simultaneously processing incoming requests. (**Exhibit 10**).

42.    FMCSA's July 9, 2025 response also stated that, under the FMCSA's first-in-first-out method of processing FOIA requests, the July 8th Request could take up to eleven months to process.

43.     In its response, FMCSA did not notify The Sikh Coalition of its right to be provided with an opportunity to arrange with FMCSA an alternative time frame for processing the request.

44.     On September 30, 2025, The Sikh Coalition sent FMCSA a request to arrange an alternative time frame for processing the July 8th Request, proposing that FMCSA produce the documents within six weeks, on or before November 11, 2025, and stating that The Sikh Coalition looked forward to hearing from FMCSA as to the next steps in arranging for an alternative processing time frame (**Exhibit 11**).

45.     On October 1, 2025, FMCSA responded to The Sikh Coalition's request to arrange an alternative processing time frame with an unsigned, three-sentence email that reiterated FMCSA's original message that it may take up to eleven months to process the July 8th Request, and did not address The Sikh Coalition's request to arrange an alternative processing time frame. (**Exhibit 12**).

46.     As of the filing of this Complaint, FMCSA has not produced any responsive documents.

47.     As of the filing of this Complaint, FMCSA has not made a determination as to whether it will comply with the July 8th Request.

48.     As of the filing of this Complaint, FMCSA has not substantively responded to The Sikh Coalition's request to invoke its statutory right for an opportunity arrange an alternative time frame.

**The Community Needs a Response from FMCSA**

49.     On December 10, 2025, Secretary of Transportation Sean Duffy posted on X that the Department has "now knocked 9,500 truck drivers out of service for failing to speak our national language—ENGLISH!"[2]

50.     According to data from FMCSA's Motor Carrier Management Information Systems ("MCMIS"), in 2025, there were 18,211 violations involving drivers being unable to read and speak English sufficiently to converse with the general public, to understand highway traffic signs and signals in English, respond to official inquiries, and make entries on reports and record (violation code 391.11B2Q); 1,427 violations involving drivers' inability to read or speak English sufficiently to respond to official inquiries (violation code 391.11B2); 28,283 violations involving drivers' inability to satisfy the ELP requirements "as per FMCSA Enforcement Guidance Memo MC-SEE-2025-0001," (violation code 391.11B2Z); and 1,395 violations involving drivers' inability to understand highway traffic signs and signals in English (violation code 391.11B2S).

51.     On April 15, 2026, The Sikh Coalition emailed FOIA Officer Jennifer Weatherly, to inform FMCSA that, more than nine months after submitting the July 8th Request, it had not received any notification that its July 8th Request had been processed. (**Exhibit 13**).

52.     The Sikh Coalition stated that if it did not hear back by Friday, April 17, 2026, it would be filing the underlying complaint. (**Exhibit 13**).

53.     On April 16, 2026, FMCSA's FOIA Office sent an unsigned response to the April 15, 2026 email reiterating that it is working to reduce a nine- to-eleven-month backlog of requests and that it may take the office up to eleven months to process the July 8th Request. (**Exhibit 13**).

---

[2] @SecDuffy, TWITTER (Dec. 10, 2025, 10:36 AM), https://twitter.com /LegalRebels/status/44815143322062080.

54.    FMCSA's email on April 16, 2026 was the last correspondence The Sikh Coalition received from FMCSA.

**LEGAL FRAMEWORK**

55.    FOIA provides the public with "access to documents and records" held by federal agencies. *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982).

56.    In furtherance of that purpose, FOIA establishes a deadline of 20 working days by which federal agencies like FMCSA must make a determination as to whether to comply with a FOIA request and notify the requester of their determination. *See* 5 U.S.C. § 552(a)(6)(A)(i).

57.    A determination is different from the actual production of underlying records, *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 10 (D.D.C. 2015), and simply communicates "the scope of the documents [an agency] intends to produce and withhold, and the reasons for withholding any documents." *Am. Oversight v. U.S. Dep't of Just.*, 2026 WL 914925, at *1 (D.D.C. 2026) (citing *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013)).

58.    The statute requires that, within the relevant time period, an agency must determine whether to comply with a request—that is, whether a requester will receive all the documents the requester seeks. *See Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013).

59.    "It is not enough that, within the relevant time period, the agency simply decides to later decide." *Id.* "Within the relevant time period, the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Id*. "If the agency does not make a 'determination' within the relevant statutory time period, the requester may file suit without exhausting administrative appeal remedies." *Id.* at 185.

- 10 -

60.     Under one of three "unusual circumstances," federal agencies may extend the 20 working day deadline by up to ten working days. *See id*.; *see also* 5 U.S.C. § 552(a)(6)(B)(i).

61.     5 U.S.C. § 552(a)(6)(B)(iii) enumerates these three unusual circumstances:

(1) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request; (2) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or (3) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

 *See also Citizens for Resp. & Ethics*, 711 F.3d at 185.

62.     "[I]f the request cannot be processed within [the 20 working day limit]" the agency must "provide the person an opportunity to limit the scope of the request so that it may be processed within [the 20 working day limit] or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." 5 U.S.C. § 552(a)(6)(B)(ii).

63.     Once in court, however, the agency may further extend its response time if it demonstrates exceptional circumstances to the court. *See Citizens for Resp. & Ethics*, 711 F.3d at 185.

64.     Congress subsequently amended FOIA to include two additional factors for the Court to consider in analyzing whether exceptional circumstances exist in a particular case:

[T]he term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests. Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) . . . after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

*Daily Caller News Foundation v. F.B.I*, 387 F.Supp.3d 112, 115 (D.D.C. 2019) (quoting 5 U.S.C. § 552(a)(6)(C)(ii)-(iii)).

65. If exceptional circumstances exist, then "the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." *Citizens for Resp. & Ethics*, 711 F.3d at 185.

66. However, exceptional circumstances do not exist just because an agency receives a high number of FOIA requests or has a large backlog of requests to which it must respond. *See Daily Caller News Foundation*, 387 F.Supp.3d at 116. Instead, an agency must show that the number of requests received in the relevant period was truly unforeseen and remarkable. *Id*.

## CAUSE OF ACTION

## VIOLATION OF FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552(A)(6)(A), FOR FAILURE TO RESPOND WITHIN THE TIME REQUIRED

67. Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

68. Plaintiff properly submitted the July 8th Request seeking three specific records within the possession of the Defendant.

69. To date, Defendant has not provided a determination as to whether it will comply with the July 8th Request as required by 5 U.S.C. § 552(a)(6)(A)(i).

70. To date, Defendant has not provided Plaintiff with a notification that the request cannot be processed within the 20 working days due to "unusual circumstances."

71. Defendant's response that they are working to reduce a nine- to eleven-month backlog of requests in addition to processing current requests does not fall under exceptional circumstances in order to warrant an extended response time.

72. Defendant's failure to make the requisite determination and to respond to the Plaintiff within the time allotted by the statute violates 5 U.S.C. § 552(a)(6)(A)(i).

- 12 -

**<u>REQUESTED RELIEF</u>**

WHEREFORE, Plaintiff respectfully requests that this Court:

a.   Enter an Order:

   i.   declaring that Defendant's failure to make a determination on the requested records is unlawful;

   ii.   directing Defendant to immediately and expeditiously process determination of the July 8th Request, by a date certain, and release the responsive records to Plaintiff; and

   iii.   declaring that the requested records are not exempt from disclosure under FOIA;

b.   Enjoin Defendant from withholding non-exempt, responsive records;

c.   Maintain jurisdiction over this action until Defendant complies with FOIA and all orders of this court;

d.   Award Plaintiff its litigation costs, including reasonable attorney's fees incurred in this action, as provided by 5 U.S.C. § 552(a)(4)(E); and

e.   Grant such other relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ *Amandeep S. Sidhu*

Amandeep S. Sidhu (D.C. Bar No. 479721)
Sarah J. Lim (D.C. Bar No. 90028264)
**WINSTON TAYLOR LLP**
1901 L Street NW
Washington, DC 20036-3506
(202) 282-5828
(202) 282-5065
*amandeep.sidhu@winstontaylor.com*
*sarah.lim@winstontaylor.com*

Marissa Rossetti
*(Pending Pro Hac Vice Admission)*
**THE SIKH COALITION**
165 Broadway St., Office 2359
New York, NY 10006
(847) 786-5839
*marissa@sikhcoalition.org*

*Counsel for Plaintiff*