# EXHIBIT 2



20 May 2025

Secretary Sean Duffy
U.S. Department of Transportation
1200 New Jersey Avenue, SE
Washington, DC 20590

Dear Secretary Duffy,

We are writing to you on behalf of the Sikh Coalition, the nation's largest Sikh civil rights organization. By way of background, our organization was founded in the immediate aftermath of September 11, 2001, in response to a torrent of hate crimes, discrimination, profiling, and bullying against members of the Sikh religious community throughout the United States. Our mission since then has been to work towards a world where Sikhs and other religious communities in America can freely practice their faith without bias and discrimination.

As you are no doubt aware, the White House published Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers," (EO 14286) on April 28.[1] This order rescinds the guidance document titled "English Language Proficiency Testing and Enforcement Policy MC-ECE-2016-006," issued on June 15, 2016,[2] and directs the Department of Transportation (Department) to issue new guidance to the Federal Motor Carrier Safety Administration (FMCSA) outlining revised inspection procedures for ensuring compliance with the federal regulation requiring English language proficiency (ELP) among truck drivers.

For context, approximately 150,000 Sikhs and Punjabis work in the trucking industry, 90 percent of whom are drivers.[3] More than 30,000 Sikh and Punjabi drivers joined the industry between 2016 and 2018,[4] contributing significantly to this critical sector prior to supply chain problems in 2020. Unfortunately, our organization knows firsthand that Sikhs have faced discrimination in the industry in the past. For instance, Sikh truckers have faced hiring discrimination, as evidenced by

---

[1] "Enforcing Commonsense Rules of the Road for America's Truck Drivers," The White House,  April 28, 2025, https://www.whitehouse.gov/presidential-actions/2025/04/enforcing-commonsense-rules-of-the-road-for-americas-truck-drivers/.

[2] "ACTION: English Language Proficiency  Testing and Enforcement Policy MC-ECE-2016-006," Federal Motor Carrier Safety Administration, U.S. Department of Transportation, June 15, 2016, via https://www.oregon.gov/odot/MCT/SafetyNoticesBulletins/SafetyNotice_English-Proficiency.pdf.

[3] "An all-American industry changes the all-American way," The Economist, May 5, 2018, https://www.economist.com/united-states/2018/05/03/an-all-american-industry-changes-the-all-american-way.

[4] Jim Axelrod, "More than 30,000 Indian-American Sikhs have entered the trucking industry in 2 years," CBS News, November 23, 2018, https://www.cbsnews.com/news/sikh-indian-americans-becoming-truckers-mintu-pandher-laramie-wyoming/.



our landmark 2016 settlement with J.B. Hunt.[5] We also know that Sikh truckers have experienced other issues around discrimination (in particular with regard to their articles of faith)[6] and hate crimes,[7] and we have heard anecdotal reports of brokers not wanting Sikh and Punjabi truckers to pick up their loads, as evidenced by written instructions waving off any driver with the last name "Singh" from the opportunity.

In light of the significant number of Sikh and Punjabi truck drivers in the United States, and the documented risk of discrimination that they face, we have compiled several recommendations for the new guidance on ELP enforcement. **To be clear, our intention is not to refute the common sense safety need for all drivers to understand a level of English essential to driving in the United States, but rather to reduce the risk of any discrimination against truck drivers in the name of ELP enforcement.** We want to ensure that neither this Executive Order nor any new policy it creates is misapplied in a way that disproportionately or discriminatorily impacts Sikh and Punjabi truckers.

Per our analysis, the primary purpose of the 2016 guidance was to remove the requirement to place drivers out of service (OOS) for a lack of ELP. EO 14286 calls for the reversal of this provision, requiring the Department to ensure that the OOS criteria are revised such that a violation of the ELP requirement (a type of violation that made up only .19% of all roadside inspection violations between 2021 and 2025) results in the driver being placed OOS. Again, we do not disagree that drivers must be able to communicate in English sufficiently to converse with the public, understand highway signs and signals, and perform other tasks established in 49 CFR 391.11 (b)(2). But we *are* concerned that requiring FMCSA personnel to place drivers OOS for ELP violations could result in discrimination against Sikh and Punjabi truck drivers, regardless of their English language proficiency. Drivers—who should have already successfully demonstrated their competency by passing their states' federally-regulated knowledge and skills tests to obtain their Commercial Drivers Licenses—could be profiled for their appearance and subject to disproportionate or discriminatory additional scrutiny during roadside inspections. If drivers are ordered OOS, they could be rendered unemployed depending on their company's policies and have limited recourse for an appeal of that judgement—all based on subjective judgements by individual officers about their accent, vocabulary, and other aspects of their ELP.

To help mitigate these risks, we recommend that the Department's new guidance on ELP enforcement should maintain the following provisions from the rescinded 2016 guidance:

---

[5] "Our Cases: JB Hunt Settlement," The Sikh Coalition, https://www.sikhcoalition.org/our-work/legal-and-policy/jb-hunt-settlement/.

[6] Anisha Sircar, "'Please remove your hat': Sikh truck drivers in the US face discriminatory drug testing practices," Scroll.In, March 12, 2021,  https://scroll.in/global/989066/please-remove-your-hat-sikh-truck-drivers-in-the-us-face-discriminatory-drug-testing-practices.

[7] Frances Kai-Hwa Wang, "Arrest, Apology Made in California Sikh Temple Vandalism," NBC News, December 14, 2015, https://www.nbcnews.com/news/asian-america/arrest-apology-made-california-sikh-temple-vandalism-n479726.



**National Office**: 165 Broadway, Office 2359 |  New York, NY 10006
t:  212.655.3095  |  f:  212.208.4611
**www.sikhcoalition.org**



**Explicit Title VI Reminder:** The Departments' original policy memo[8] that accompanied the 2016 guidance established as a preliminary matter that FMCSA Recipient-conducted enforcement activities, including inspections, are to be implemented in a non-discriminatory manner that comports with the National Origin protection under Title VI generally and affording reasonable accommodation to LEP drivers specifically. It is essential that the Department's new guidance include this language to reduce the risk of national origin discrimination against Sikh and Punjabi truck drivers under the guise of or in the course of ELP enforcement.

**Roadside Interviews to Assess ELP:** The 2016 guidance established that formal driver interviews to confirm ELP would not be conducted during roadside inspections. The new guidance should maintain this provision because of the significant risk of discrimination associated with allowing formal ELP interviews in the context of roadside inspections. To our knowledge, neither the FMCSA's nor the Commercial Vehicle Safety Alliance's (CVSA's) policies for inspector certification provide for any training on how to assess drivers' ELP. This leads us to multiple concerns:

1. Formal ELP interviews during roadside inspections should not be conducted by individuals with no training to make unilateral decisions about which drivers to subject to formal ELP interviews, and
2. Formal ELP interviews during roadside inspections should not be conducted by individuals who will ultimately make untrained and subjective judgements about which drivers can and cannot speak English sufficiently to comply with the federal ELP requirement.

Specifically, we are concerned that inspectors might single out Sikh and Punjabi drivers for ELP interviews solely because of their articles of faith, skin color, race/ethnicity, or because they otherwise 'look' to the inspector like they might not speak English. We are also concerned that drivers who do meet the federal ELP requirement could *still* be wrongfully cited for ELP violations and placed OOS simply because they speak with an accent or because an inspector otherwise makes an incorrect discretionary judgment about their ELP.

**'Sufficient Communication' Guideline:** The 2016 guidance established that if a driver can communicate sufficiently to complete a roadside inspection or investigation, they should not be cited for an ELP violation. This is a reasonable and sound provision: If a driver can communicate sufficiently during an inspection, it follows that they should not be cited for an inability to communicate.

**Communications Tools:** The 2016 guidance established that, to facilitate easier communication, tools such as interpreters, I-Speak cards, cue cards, smartphone applications, and On-Call

---

[8] See Footnote #2.



**National Office**: 165 Broadway, Office 2359 |  New York, NY 10006
t:  212.655.3095  |  f:  212.208.4611
**www.sikhcoalition.org**



Telephone Interpretation Service may be used when interacting with drivers, and the use of these devices does not in and of itself constitute an ELP violation. The Department's new guidance should maintain this rule in order to ensure that drivers are not deterred from using communication tools—particularly for individuals who are in the process of actively strengthening their ELP, or when using these tools might otherwise be helpful for drivers to convey information critical to safety or logistics.

**Provisions for Deaf or Hard-of-Hearing Drivers:** The 2016 guidance established that if a deaf or hard-of-hearing driver had obtained an exemption from the hearing standard under 49 CFR 391.41(b)(l l), the driver satisfied the English language requirement if they could read and write English sufficiently to communicate. This is a common-sense policy that the new guidance should retain.

**Documentation of English Language Training:** Finally, the 2016 guidance established that if a driver was cited for an ELP violation and the employing motor carrier provided information advising that the employee has completed English language training, it should be considered sufficient documentation for addressing this violation. This provision should be maintained, because it provides a clear, objective process for addressing ELP violations as well as critical recourse for drivers who might be rendered OOS from such violations. We are concerned that in the absence of this provision, drivers will be required to meet unstandardized and discretionary criteria to remedy ELP violations.

In addition to retaining the above aspects of the now-rescinded 2016 guidance, we respectfully urge that the Department's new guidance include detailed information on the following items:

1. Specific information about the individuals who will be empowered to make ELP judgements of drivers, the training they will receive to make those judgements, and the objective and standardized criteria they will use to make those judgements, and
2. The process for recourse available to drivers who are rendered OOS due to an ELP violation, including but not limited to how to appeal an ELP violation, the authority that will be accountable for responding to those appeals, the timeline within which those appeals will be considered, and the means by why a driver rendered OOS due to an ELP violation can verify their ELP after further study.

To reiterate a final time, there is no doubt that we must keep our roads safe; this common sense concern applies to Sikh and Punjabi drivers—who continue to make up a sizeable percentage of this workforce critical to our transportation and distribution infrastructure—as much as it does to any motorist in America. We are equally certain that our nation has a collective interest in maintaining a trucking industry in which all qualified individuals, including drivers, are able to contribute their skills regardless of where they're from or how they look.



**National Office**: 165 Broadway, Office 2359 | New York, NY 10006
t: 212.655.3095 | f: 212.208.4611
**www.sikhcoalition.org**



Thank you for considering our recommendations. We welcome the opportunity to answer any questions you may have or to speak with you further about this matter, and we look forward to reviewing the Department's new guidance upon its release.

Best regards,

Mannirmal Kaur
Senior Federal Policy Manager
The Sikh Coalition

Graham F. West
Managing Director of Policy and Communications
The Sikh Coalition